# John C. Held *v.* Howard T. McBride, Appellant.

*Easements—Appurtenant to dominant estates—Conveyance thereof.*

It is settled law in Pennsylvania that an owner of land may arrange it as he pleases, doing no injury to others, and that any ways or other privileges which he may provide for the necessary or convenient use of the different parts of the land, or of structures on it, will remain as servitudes upon the parts subjected to them by him, in the hands of subsequent purchasers with notice, or when the easements are continuous and apparent. The easements thus created, being for the specific use of the lands for which they were provided, become appurtenances of those dominant estates, and require no deed or writing to support them; they pass by a conveyance of the estates to which they are appurtenant.

Argued Oct. 5, 1896. Appeal, No. 66, Nov. T., 1895, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1894, No. 1014, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for determining right to use of alley.

The following facts appear from the opinion of the Superior Court.

"This action of trespass was brought for the purpose of having determined whether the plaintiff has a right to the use of an alley extending along the rear of his lot and its adjoining lots, situate in the Twenty-First ward of the city of Philadelphia.

"It appears that in the year 1877, Nathan L. Jones was the owner of a tract of land in that ward, having a frontage of one hundred and thirty feet on Ridge avenue and a depth of about seven hundred feet. During that year he erected four houses, compactly built, fronting on Ridge avenue, and put up a fence along in the rear at a distance of about one hundred and ten feet from the front line. An alley ten feet wide, with this fence as its southwesterly boundary, was laid out and extended across the Jones land from its northerly boundary adjoining the Keely land, to its southerly boundary, now known as Cemetery avenue. Gates were hung in this fence making passageways from each

156        HELD *v.* McBRIDE, Appellant.

Statement of Facts—Assignment of Errors.    [3 Pa. Superior Ct.

houselot into the alley, and the waste water was drained into it through gutters made for that purpose.

" Nathan L. Jones died in 1879, and soon thereafter all the land was sold, in separate lots, at an orphans' court sale, to different purchasers. At this sale Charles Thompson Jones bought all of the tract in the rear of the Ridge avenue lots and his deed included the land covered by the alley. In 1882 he sold to the appellant a lot forty feet in front on Cemetery avenue and extending in depth, the entire width of the tract, to the Keely land. According to the description in the appellant's deed his southwesterly line was parallel with and ten feet distant from the rear fence of the Ridge avenue lots, and was ' bounded . . . . southwestwardly by a certain ten feet wide alley laid out by the said Charles Thompson Jones along the rear end of lots fronting on said Ridge avenue.'

" The appellant built a dwelling house on his lot in 1883 and put up a fence along the southeasterly side of the alley referred to in his deed. In 1891 the title to one of the four Ridge avenue lots became vested in the appellee. In 1894 the appellant acquired the fee to the land covered by the alley. No mention is made of the alley in the court proceedings, or in any deed except the appellant's. In 1894, after securing the fee, the appellant shut up the gates leading from the Ridge avenue lots into the alley, and this action followed."

Verdict for plaintiff. Damages assessed at 1 cent. Defendant appealed.

*Errors assigned* were, (1–9) in submitting to the jury the question whether an alley was laid out, and confining this question to whether Nathan L. Jones did lay out such alley; (10–12) in admitting evidence as to what was said by the auctioneer at the orphans' court sale; (13) in sustaining plaintiff's objection to the admission of the following notice, viz :

" ROXBOROUGH, Phila., April 17, 1890.

" DEAR SIR :

" You are hereby notified to quit using the strip of ground fronting on Cemetery Avenue, at the rear end of your lot, as and for a passageway, water course and drain, as now used by you. It has become a nuisance by reason of the use it has been

put to. You have no right to the use thereof for any purpose whatever.

> "Yours respectfully,
>
> "CHARLES THOMPSON JONES, JR.,
> "MARY W. CORNMAN,
> "ADELE JONES,
> "ELOISE L. JONES."

(14) In sustaining plaintiff's objection to the following offer made by the defendant, viz : I offer to prove that notice was received from the board of health to clean this alley only, and it was served on Charles Thompson Jones, Jr., and that it was cleaned by the estate of Charles Thompson Jones.

*Amos Briggs, Frederick A. Sobernheimer*, for appellant. — There was no testimony for such submission to the jury as is complained of in the first nine specifications of error.

An examination of the cases will show that there must be no uncertainty about the establishment of an easement. It must be clear, beyond any dispute as to the facts, and so clear, as stated in some of the cases, that it must be palpable and notorious : Seibert v. Levan, 8 Pa. 383; Cope v. Grant, 7 Pa. 488; Phillips v. Phillips, 48 Pa. 178; Kieffer v. Imhoff, 26 Pa. 438; Cannon v. Boyd, 73 Pa. 179; Zell v. The Society, 119 Pa. 390; Ermentrout v. Stitzel, 170 Pa. 540.

*Francis S. Cantrell*, with him *Francis S. Cantrell, Jr.*, for appellee.—In Railroad Company v. Jones, 50 Pa. 424, it was held : "It is the settled doctrine of this State that a permanent right established by the owner over his property, necessary for its convenient use, will not be destroyed by his sale or his incumbrance:" Phillips v. Phillips, 48 Pa. 178; Cope v. Grant, 7 Pa. 488; Overdeer v. Updegraff 69 Pa. 110; Ermentrout v. Stitzel, 170 Pa. 540.

OPINION BY SMITH, J., December 7, 1896 (after stating the facts as above) :

It is claimed on behalf of the appellant that there was not sufficient evidence to warrant the verdict and that the court below erred in its charge and rulings on certain offers of evidence. The first nine of the fourteen assignments relate to the

charge and answers to points, and may be considered together. No points were presented on behalf of the appellant.

Sylvester Yardley, a builder, testified that in 1877 or 1878 he erected four houses fronting on Ridge avenue for Nathan L. Jones; that he put up a fence along the rear of all of those house lots and built division fences between the back yards of each; that he hung four gates in the rear fence, one for each yard, and that they opened into the alley. He also says he put in a brick pavement so as to drain the hydrant water into a gutter, emptying into the alley. He further says that he laid out a ten foot alley with this rear fence forming its southwesterly side, and staked the opposite side, and extended the alley from what is now known as Cemetery avenue to Keely's land on the north. He testifies that he did all of this at the request of Nathan L. Jones who employed him for that purpose. Mr. Yardley, and other witnesses, testify that Nathan L. Jones spoke of the land in dispute as an alley; and that it was used as such in connection with the Ridge avenue lots, by the occupants, from the erection of the houses in 1878 until it was closed up by the appellant in 1894. Other facts and circumstances were testified to in corroboration of the appellee's contention.

That the defendant had actual knowledge of the existence of the alley is undoubted. His deed called for it as a boundary: gates open into it, and he saw the occupants of these adjoining lots use it. Furthermore he himself erected his fence along its southeasterly line (which was also his northwesterly line), and it remained thus inclosed on both sides from 1883 until 1894.

It is true there was evidence on behalf of the appellant from which it might be inferred that the alley was not wholly defined and fully established as an appurtenant to the Ridge avenue lots by Nathan L. Jones, but with this. we are not now concerned. The whole evidence was for the jury, and in the absence of any prayer by the appellant, for binding or other instructions, our inquiry is directed to the rulings and charge of the court below, as complained of in the assignments.

It is settled law in Pennsylvania that an owner of land may arrange it as he pleases, doing no injury to others, and that any ways or other privileges which he may provide for the necessary or convenient use of the different parts of the land, or of structures on it, will remain as servitudes upon the parts subjected

to them by him, in the hands of subsequent purchasers with notice, or when the easements are continuous and apparent. The easements thus created, being for the specific use of the lands for which they were provided, become appurtenances of those dominant estates, and require no deed or writing to support them; they pass by a conveyance of the estates to which they are appurtenant.

These principles have frequently been applied in the reported cases. They are well illustrated in Overdeer v. Updegraff, 69 Pa. 110, and Cannon v. Boyd, 73 Pa. 179, cases in which the facts are quite similar to the facts of the one before us. In Overdeer v. Updegraff, William Hinney owned two lots and put up a building on each, with an alley on one of them covered by the second story of the building. This alley extended a few feet beyond the back wall of the buildings, with gates opening into it from each lot, and it was used by the occupants of both houses for fourteen years. Hinney died and the lot with the alley on it was sold by his administratrix under an order of the orphans' court. The alley was not mentioned in the proceedings, though it was in the deed. It was held that the purchaser took subject to the rights of the adjoining lot owner in the easement. In this case the Supreme Court said: "But if there had been no express reservation of the right to the use of the alley in the conditions of sale, and in the deed executed and delivered to the purchaser, the latter would have taken it subject to the servitude imposed upon it by the decedent for the use and enjoyment of the occupants of the adjoining lot. It was a continuous and apparent easement, and the law is well settled that in such a case the purchaser, whether at private or public sale, takes the property subject to the easement: Keefer v. Imhoff, 26 Pa. 438 ; McCarty v. Kitchenman, 47 Pa. 239 ; Phillips v. Phillips, 48 Pa. 178; Railroad Co. v. Jones, 50 Pa. 427. Whether the plaintiff, then, had constructive notice of the reservation of the easement or not, is wholly immaterial. If it was continuous and apparent, as it unquestionably was, he took the lot subject to it." The case of Cannon v. Boyd is still closer in point. One McCabe bought a piece of land and gave a mortgage on it for part of the purchase money. He divided the land into three lots and built on two of them and laid out an alley on one for the use of both, and it was so used for more than

ten years. The land was sold in three separate lots by the sheriff, under the mortgage, and no mention was made of the alley in the proceedings or in the sheriff's deeds, but it was held that the purchasers of the two lots took subject to the easement, and that the defendant had no right to close the alley; the court saying: "Where a continuous and apparent easement or servitude is imposed by the owner on one portion of his real estate for the benefit of another, the law is well settled that a purchaser at private sale or judicial sale, in the absence of an express reservation or agreement on the subject, takes the property subject to the easement or servitude : Seibert v. Levan, 8 Pa. 383 ; Overdeer v. Updegraff, 69 Pa. 110, and cases there cited. The sheriff sold and conveyed the lots to the parties in this case without reference to the existence of the alley on the lot purchased by the defendant; but the evidence shows that the alley was open and apparent at the time of the sale, and that there was a gate leading into it from the lot purchased by the plaintiff, clearly indicating that it was used in common by the tenants of both lots. It also appears from the evidence that the alley was laid out and opened by McCabe, the former owner of the lots, and that it was used in common by the occupants thereof for a period of more than ten years prior to the sheriff's sale. The court below was, therefore, clearly right in declining to charge that the sheriff's sale and deed vested the soil of the alleged alley in the defendant clear of the easement claimed by the plaintiff."

In the present case it is quite evident from the charge that the learned judge of the court below had clearly in mind the ruling principles of the law of easements, and that he applied them correctly to the facts of this case. The matters complained of in the first nine assignments are, in themselves and when taken in connection with the other portions of the charge, a clear and correct presentation of the law as applicable to the facts, and require no further comment here. These assignments are overruled.

What was said at the orphans' court sale about the alley, and made the subject of the tenth, eleventh and twelfth assignments, was properly admitted. It is difficult to understand how the admission of this testimony injured the appellant. It is the want of notice that is usually complained of, and not that it has

been given.  It is quite evident that the appellant's grantor recognized the alley mentioned at the orphans' court sale, and defined its southeasterly line in the deed of the appellant's lot.

The offer to show that the heirs of Charles Thompson Jones served a written notice on the occupants and owners of the Ridge avenue lots in 1890, directing that they should no longer use the alley as a passageway, was properly rejected.  The right to use the alley, as an appurtenant to the lots fronting on Ridge avenue, originating in the dedication or appropriation by Nathan L. Jones some twelve years before, and followed during that period by apparent and continuous use, had then become a vested right, which could not be divested or impaired by the notice which the defendant offered to prove.  Furthermore, this notice was given before the plaintiff's acquisition of title, and the offer did not propose to connect him with it.  The action of the board of health, or the view taken by that body of the ownership of the alley, was wholly beyond the issue being tried.  The last five assignments are also overruled, and the judgment is affirmed.