In re the CONDEMNATION BY the COUNTY OF ALLEGHENY OF CERTAIN COAL, OIL, GAS, LIMESTONE AND MINERAL PROPERTIES With Appurtenant Mining Rights and Certain Private Roads, Pipelines, Gaps And Gores Situate in the Townships of Findlay and Moon, Allegheny County, Pennsylvania, now and Formerly of Carol M. Captline, now Known as Carol Mazzaro Nicoletti, Executrix of the Estate of Mike Mazzaro, Pauline Mazzaro, et al.

Carol M. NICOLETTI, Executrix of the Estate of Mike Mazzaro and Pauline Mazzaro

v.

The COUNTY OF ALLEGHENY,

The Estate of Mike Mazzaro, Appellant.

In re the CONDEMNATION BY the COUNTY OF ALLEGHENY OF A CERTAIN PARCEL OF LAND IN FEE (Including all Mineral Rights Therein) in the Township of Findlay, Allegheny County, Pennsylvania, now or Formerly of the Estate of Mike Mazzaro et al.

Carol M. NICOLETTI, Executrix of the Estate of Mike Mazzaro and Pauline Mazzaro

v.

The COUNTY OF ALLEGHENY, Appellant (Two Cases).

Commonwealth Court of Pennsylvania.

Argued June 11, 1998.
Decided Aug. 21, 1998.
Rehearing and/or Reconsideration Denied Oct. 29, 1998.

Louis J. Kober, II, Greensburg, for appellant.

Michael G. McCabe, Pittsburgh, for appellee.

Before DOYLE and FLAHERTY, JJ., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

These are cross appeals from an order of the Court of Common Pleas of Allegheny County (trial court) involving a de jure condemnation of mineral estates in tracts of land located in Findlay Township, Allegheny County. These tracts are designated as Tracts 1, 5, 7 and 9. Allegheny County (the County) cross appeals from the trial court's holdings that the Estate of Mazzaro (Mazzaro) possessed any property interest in Tracts 1 and 9 and that Mazzaro had a right to mine minerals or coal beneath Tracts 1, 5, 7 and 9. Mazzaro appeals from the trial court's hold-ing that it is not permitted to strip mine any of the tracts. We affirm.

On April 7, 1987, the County condemned mineral estates underlying Tracts 1, 5, 7, and 9 which were allegedly owned by Mazzaro. The mineral estates were conveyed to Mazzaro by a quit-claim deed dated September 20, 1965 from Kirk Industries Inc. to Mike Mazzaro. Kirk Industries, Inc. is the successor of Cosgrove–Meehan Coal Company of Pennsylvania.

The quit-claim deed from Kirk Industries to Mazzaro regarding Tract 1 conveyed:

All the coal, gas, oil, limestone and other minerals underlying Tract One, more fully described below, and the rights to enter upon said premises or any part thereof for the purpose of mining, drilling and carrying away said coal, gas, oil, limestone and other minerals, and to perform all acts incident or appertaining thereto.

The language in the deed regarding Tract 9 conveyed:

ALL the coal gas, oil, limestone and other minerals underlying said Ninth Tract of land, more fully described below, and the rights of said Cosgrove Coal Company, its successors and assigns, to enter upon said premises, or any part thereof, for the purpose of mining, drilling and carrying away said coal, gas, oil, limestone and other minerals and to perform all acts incident or appertaining thereto.

The language of the deed concerning Tract 5 conveyed: "ALL the coal underlying that certain tract five, which is more fully described as follows..."

The relevant language in the deed regarding Tract 7 conveyed:

ALL coal of the Pittsburgh Seam lying and being in, under and upon said Seventh Tract of land, more fully described below, together with mining rights for mining said coal by underground mining or by stripping and release of surface damages as fully as same are described in Agreement of Lease between Lenox Coal Company and John S. Miller; also all gas and oil in said tract of land, together with the privilege of drilling and operating and rights of way for pipelines to carry oil, gas,

water or steam off, on or across the said land; also the right to operate any wells on said premises by shackle work and to connect the same with adjoining property. No derricks or wells are to be placed within 500 feet of buildings.

■ Appellate review in an eminent domain proceeding is limited to determining whether the trial court committed an error of law, abused its discretion or whether findings of fact are supported by substantial evidence. *Riehl v. Millcreek Township,* 26 Pa.Cmwlth. 70, 362 A.2d 478 (1976).

As relevant to this case, Mazzaro's chain of title is derived from a deed (the 1942 deed) between Cosgrove–Meehan Coal Company of Pennsylvania as grantor and James Morrow, Jr. as grantee. On July 30, 1942, Cosgrove–Meehan Coal Company of Pennsylvania conveyed by deed to James Morrow, Jr. all of the property covered in Tracts 1 and 9:

> EXCEPTING AND RESERVING to the Cosgrove–Meehan Coal Corporation, its successors and assigns, all the coal, gas, oil, limestone and other minerals and the right of said Cosgrove–Meehan Coal Corporation, its successors and assigns, to enter upon said premises or any part thereof for the purpose of mining, drilling and carrying away said coal, gas, oil, limestone and other minerals, and to perform all acts incident and appertaining thereto.

The Cosgrove–Meehan Coal Corporation was a Delaware corporation and a separate legal entity from the Cosgrove–Meehan Coal Company of Pennsylvania. This reservation/exception clause attempted to convey to the Cosgrove–Meehan Coal Corporation of Delaware which was not a party to the 1942 deed certain rights that form the basis of the right of Kirk Industries to convey the mineral estates in Tracts 1, 5, 7, and 9 to Mazzaro. In its cross-appeal the County raises the issue of whether an exception and reserva-

tion of rights on behalf of a stranger to the deed is null and void.[1]

■ The County argues and the trial court agreed that a reservation/exception of rights on behalf of an entity who is not a party to the deed is ineffective to transfer any rights in the property to that entity. Thus, the deed was not effective to except or reserve any interest to Cosgrove–Meehan Coal Corporation of Delaware.[2] We agree that the common law rule is that generally a reservation/exception of rights in a stranger to a deed is ineffective to transfer any interests to the stranger. *See, e.g., Meadows v. Belknap,* 199 W.Va. 243, 250, n. 14, 483 S.E.2d 826, 833, n. 14 (1997) ("Our case law has been definitive in holding that 'a reservation to a stranger to the instrument is void for all purposes.' "). *Rye v. Baumann,* 231 Ark. 278, 329 S.W.2d 161, 165 (1959) ("A rule, apparently universal in its application, seems to be that 'A reservation or exception in favor of a stranger to a conveyance is void or inoperative.' "); Howard H. Harris, *Reservations in Favor of Strangers to the Title,* 6 Okla.L.Rev. 127 (1953).

The County argues that the effect of the clause in the deed reserving/excepting interests in a non-party to the deed was to transfer the mineral rights to the grantee, James Morrow, Jr. and thus, at the time of the quit-claim deed from Kirk Industries (successor to Cosgrove–Meehan Coal Company of Pennsylvania) to Mazzaro, Kirk Industries did not have any interest in the mineral estates because the mineral rights had previously been conveyed to James Morrow, Jr.

The trial court however, found that the effect of this clause in the deed was to retain the coal, gas and other mineral interests in the grantor, Cosgrove–Meehan Coal Company of Pennsylvania. Thus, the trial court found that at the time of the quit-claim deed from Kirk Industries to Mazzaro, Kirk was possessed of the mineral estates. The trial

1. While we are aware of the technical distinctions between a reservation and an exception, *see, e.g., Lauderbach–Zerby Co. v. Lewis,* 283 Pa. 250, 129 A. 83 (1925), the parties do not argue that those distinctions have any bearing on this case. As such, we do not find those technical distinctions controlling of the disposition of this case.

2. Mazzaro does not respond to this argument in its brief. Rather, Mazzaro's brief only argues its point on appeal, i.e., that Mazzaro has a right to strip mine.

court reasoned that since Cosgrove–Meehan Coal Company of Pennsylvania did not intend to convey the mineral rights to James Morrow, Jr., those rights were not conveyed to James Morrow, Jr. and therefore were retained by Cosgrove–Meehan Coal Company of Pennsylvania.

The County argues that the trial court erred in its reasoning. The County asserts that "a doubtful reservation of coal and the right to mine coal contained in a deed will be construed most strongly against the grantor ... and in favor of the grantee" citing *Compass Coal Co. v. Commonwealth of Pa. Game Commission,* 71 Pa.Cmwlth. 252, 454 A.2d 1167, 1169 (1983). The County argues that because the deed from Cosgrove–Meehan Coal Company of Pennsylvania purports to convey all interests to James Morrow, Jr. with the reservation /exception of the mineral rights and the reservation/exception is ineffective, this court must construe this "ambiguity" against the grantor and read the deed as if the reservation/exception were not present and thus, the entire fee simple was conveyed to James Morrow, Jr., including the mineral estates. We disagree.

█ The primary object of the court in construing a deed is to ascertain and effectuate the intention of the parties. *In re Conveyance of Land Belonging to the City of Dubois,* 461 Pa. 161, 335 A.2d 352 (1975). In ascertaining and effectuating the intentions of the parties, courts examine the language of the entire deed and consider the subject matter, and the apparent object or purpose of the parties and conditions existing at the time the deed was executed. *Id.* And while it is true that where the language is ambiguous, it is to be construed most favorably to the grantee, this rule of construction is not to be applied where "the language is sufficiently clear to define the character and extent of the exception or reservation." *Shawville Coal Co. v. Menard,* 280 Pa.Super. 610, 421 A.2d 1099, 1102 (1980). In this case, the language is not ambiguous. It is clear what the parties intended by their words. The intent was that James Morrow, Jr. not re-

ceive the right to mine coal. It is not that the language of the deed is ambiguous, just that there is a legal rule against attempting to accomplish by the language herein utilized what the parties wanted to accomplish, namely, reserve/except an interest in a nonparty to the deed. Thus, the rule of construing a deed most favorably to the grantee simply does not have application here insofar as that rule applies only where the language is ambiguous. To construe the language of the deed as the County contends would be to frustrate the intent of the parties to the deed. This we cannot do.

█ The question remaining is what is the effect of this language in the deed given the legal rule which renders the language ineffective. As the trial court noted, "the County does not cite any case law which holds that a deed containing an exception or reservation of mineral rights on behalf of a stranger to the title operated to convey to the grantee these mineral rights that were excepted and reserved." Trial court slip op. at 2. Because to hold that the effect of this language is to transfer the right to mine coal to James Morrow, Jr. would be to frustrate the manifest intent of the parties that such a right not be transferred to him, and because the attempted reservation/exception of rights in Cosgrove–Meehan Coal Corporation of Delaware fails as a null and void act, we find that the interests so reserved/excepted remained in Cosgrove–Meehan Coal Company of Pennsylvania. *See, e.g., Malloy v. Boettcher,* 334 N.W.2d 8, 9 (N.D.1983) (noting that the common law rule provided that "a reservation or exception purporting to be in favor of a stranger operates in favor of the grantor and prevents the title from passing to the grantee" but declining to follow the common law rule.) Thus, when the Cosgrove–Meehan Coal Company of Pennsylvania transferred its interests to Kirk Industries, it possessed the mineral rights and those rights were transferred to Kirk Industries which subsequently transferred them to Mazzaro. Hence, we must reject the County's arguments to the contrary.[3]

---

3. The first issue which the County presented in its brief was whether the reservation of Mineral Interests in the Cosgrove–Meehan Coal Corpora-

tion of Delaware was legally inoperative because the Delaware Corporation in whom the mineral interests were to be reserved had gone out of

■ Next, the County argues that the trial court erred in holding that the language of the deed regarding Tract 5 conveyed to Mazzaro the right to mine the minerals located in Tract 5. The trial court found that the language transferring "All the coal underlying that certain tract five..." implied a right of way of necessity to enter upon the premises for the purpose of mining and removing the coal, citing *Schuster v. Pa. Turnpike Commission*, 395 Pa. 441, 454, n. 13, 149 A.2d 447, 453, n. 13 (1959).

The County argues that *Schuster* is distinguishable from this case on the facts. Namely, the County argues that in *Schuster*, the person claiming the right to **mine** the coal had been expressly given that right **as well as** the right to own the coal. Here, according to the County, Mazzaro was simply given the right to own the coal under Tract 5 and not the right to mine it. We find that the learned trial court was correct in his disposition of this matter. The Court in *Schuster* could not have been clearer when it declared that "[a] grant of minerals implies the right to win them from the underlying soil." *Schuster*, 395 Pa. at 454, n. 13, 149 A.2d at 453 n. 13, *quoting, Baker v. Pittsburg, Carnegie and Western R.R. Co.*, 219 Pa. 398, 404, 68 A. 1014, 1015 (1908). Here, Mazzaro received a grant of minerals by deed from Kirk Industries, hence, Mazzaro received the right to win them from the underlying soil. Thus, we find no error of law or abuse of discretion by the trial court on this issue.

Next we address the sole issue which Mazzaro raised in its appeal from the trial court. The trial court concluded that the language of the deed conveying mineral rights for Tracts 1, 5 and 9 did not expressly convey to Mazzaro the right to engage in strip mining. Thus, the County's condemnation of Mazzaro's interest in those tracts does not have to include compensation for Mazzaro's asserted right to strip mine. The trial court held that the law requires that the deed very specifically provide for the right to strip mine because of the destruction to the surface of

the property caused by the strip mining, *citing Compass Coal, supra.*

Mazzaro points to the language regarding Tract 1 wherein the deed permits Mazzaro to "perform all acts incident or appertaining" to the mining, drilling and carrying away of coal in Tract 1. Mazzaro argues that this language indicates an intent to permit extensive mining rights, including the right to strip mine. Mazzaro relies upon similar language in the conveyance of Tract 9 to make the same argument as it made with respect to Tract 1. In response, the County essentially repeats the trial court's position, relying upon *Rochez Brothers, Inc. v. Duricka*, 374 Pa. 262, 97 A.2d 825 (1953).

■ In *Rochez Brothers*, the reservation clause at issue therein provided that the grantor retained all of the coal

> [t]ogether with the right to mine and carry away all of said coal, and with all the mining rights and privileges necessary or convenient to such mining and removal, draining and ventilating of the same, and without being required to provide for the support of the overlying strata and without liability for injury to such surface or to anything therein or thereon by reason of the mining and removal of all said coal....

*Id.* at 264, 97 A.2d at 825. In finding that the reservation clause did not reserve the right to strip mine, notwithstanding the broad language, the Court in *Rochez* stated that

> [i]t is obvious, in view of the surface violence, destruction and disfiguration which inevitably attend strip or open mining, that no landowner would lightly or casually grant strip mining rights, nor would any purchaser of land treat lightly any reservation of mining rights which would permit the grantor or his assignee to come upon his land and turn it into a battleground with strip mining.

*Id.* at 265, 97 A.2d at 826. The Court concluded that the "phraseology [of the reserva-

---

existence prior to the date of conveyance. We note that Mazzaro does not address this issue in its brief nor did the trial court. As we have found the attempted reservation null and void for attempting to reserve rights in a stranger to the

deed, we need not address the County's argument that the reservation is null and void on the grounds that the Delaware Corporation was not a legal entity at the time of the deed.

tion clause] contains *no right to remove the overlying surface.*" *Id.* Likewise here, the language of the granting clauses regarding Tracts 1 and 9 contain no express right to remove the overlying surface, as such, the trial court did not err in concluding that Mazzaro did not have a right to strip mine those tracts.

We turn next to consideration of the language in the granting clause concerning Tract 7 which the trial court found did not include the right to strip mine. Mazzaro points to language in the granting clause concerning Tract 7 which specifically refers to "mining said coal by underground mining or by stripping and release of surface damages as same are described in Agreement of Lease between Lenox Coal Company and John S. Miller." Mazzaro asserts that this evidences an intention that Mazzaro be granted some rights to strip mine in Tract 7.

The trial court noted that the lease agreement between Lenox Coal Company and John S. Miller referred to in the deed was never recorded nor was Mazzaro able to produce it in evidence. Hence we cannot know the terms and conditions of the lease. Thus, the extent of strip mining rights is not known. Hence, the trial court reasoned that Mazzaro did not meet its burden of showing the nature and extent of the strip mining rights that are described in the lease and therefore did not prove that Mazzaro had strip mining rights at the time of the conveyance or at the time of the condemnation to strip mine Tract 7. We find that we must agree with the trial court. Absent evidence that the right to strip mining was not limited in time or extent in the Lenox Coal Company – John Miller lease, Mazzaro did not prove that it had the right to strip mine at

the time of its deed from Kirk Industries or at the time of the condemnation.

We next consider the granting clause regarding Tract 5. Although not clear, it almost appears as if Mazzaro concedes that there ·is no language in the conveyance of Tract 5 that would support a finding that Mazzaro was granted permission to strip mine Tract 5. Mazzaro conceded that "Tract 5 is more problematic since there is no explicit reference to mining. The lower court correctly recognized that in regard to this tract, Mazzaro at least had the right to deep mine." Mazzaro's brief at p. 7. As there is no express language in the granting clause for Tract 5 regarding mining, yet alone, the right to strip mine, the trial court did not err in concluding that Mazzaro had no right to strip mine Tract 5. *Rochez Brothers, supra.*

█ In the alternative to reversing the trial court's decision regarding whether Mazzaro had a right to strip mine, Mazzaro requests in his brief a remand to the trial court. Mazzaro asserts that since January 1, 1998, the estate of Mazzaro has acquired after-discovered evidence. Specifically, Mazzaro contends that two individuals informed the executrix of the estate of Mazzaro, that a "Joseph Miller (the same Joseph Miller referred to in the lease regarding Tract 7) did indeed strip mine these parcels." Mazzaro's brief at 9.[4] The County does not address this argument. There is no allegation in the brief however that such evidence was unavailable or undiscoverable by Mazzaro with the exercise of due diligence prior to trial. Moreover, there is no allegation that such newly discovered evidence will shed light upon the extent and duration of the right to strip mine granted by the deed to John S. Miller. Hence, we decline the invitation to remand.[5]

4. There is no "Joseph Miller" referred to in the lease regarding Tract 7. There is only a "John S. Miller" referred to in the context of being the individual with whom Lenox Coal Company entered a lease. There is however a "Joseph Dickson" within the Tract 7 provisions. Joseph Dickson is referred to in the context of describing the boundaries of Tract 7. We understand Mazzaro's reference in its brief to "Joseph Miller" to be a reference to "John S. Miller."

5. We note that the County filed an appeal from the trial court's order docketed at No. GD92–8514 which involved litigation over Tract No. 6. That appeal was docketed in this court at No. 2866 C.D.1997. This court on January 5, 1998, sua sponte ordered consolidation of the appeal at No. 2866 with the appeal and cross appeal which were docketed at Nos. 2865 and 2870 C.D.1997. The briefs which the parties filed do not at all address issues involving Tract No. 6. Accordingly, we find any issues with respect to the appeal at No. 2866 regarding Tract No. 6 to be waived.

Accordingly, the orders of the trial court are affirmed.

### ORDER

AND NOW, this 21st of August, 1998, the orders of the Court of Common Pleas of Allegheny County docketed at No. GD92 – 8514 and at No. GD92 – 8515 and dated September 16, 1997 are hereby affirmed.